# 15-

## In the United States Court of Appeals for the Second Circuit

DAVID KAPLAN, ET AL.,

*Plaintiffs-Respondents,*

v.

S.A.C. CAPITAL ADVISORS, L.P., ET AL.,

*Defendants-Petitioners.*

## PETITION OF DEFENDANTS-PETITIONERS S.A.C. CAPITAL ADVISORS, L.P., ET AL., FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

From an Order Granting Certification of a Class Action
Entered on December 2, 2015,
by the United States District Court for the Southern District of New York
District Court Master File No. 12 Civ. 9350 (VM)
The Honorable Victor Marrero

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8102

*Attorneys for Defendants-Petitioners S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC, and Steven A. Cohen*

## Corporate Disclosure Statement

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, petitioners S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, and Point72 Select Investments, LLC hereby say that:

S.A.C. Capital Advisors, L.P. is a limited partnership that is not subject to Rule 26.1 of the Federal Rules of Appellate Procedure.

Point72 Capital Advisors, Inc. has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

CR Intrinsic Investors, LLC has no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

CR Intrinsic Investments, LLC (now known as Point72 International Holdings, LLC) is a subsidiary of Point72 Capital International, Ltd., and Point72 GDF, Ltd., and no publicly held corporation owns ten percent or more of its stock.

S.A.C. Capital Advisors, LLC is a subsidiary of S.A.C. Holdings, Inc., and no publicly held corporation owns ten percent or more of its stock.

i

Point72 Associates, LLC is a subsidiary of Point72 Global Management, LLC, and no publicly held corporation owns ten percent or more of its stock.

Point72 Strategies, LLC is a subsidiary of Point72 Associates, LLC, and no publicly held corporation owns ten percent or more of its stock.

Point72 Select Investments, LLC is a subsidiary of Point72 Select, Ltd., and no publicly held corporation owns ten percent or more of its stock.

Point72 Global Management, LLC is a subsidiary of Point72 Capital International, Ltd., and Point72 GDF, Ltd., and no publicly held corporation owns ten percent or more of its stock.

Point72 Capital International, Ltd., Point72 GDF, Ltd., Point72 Select, Ltd., and S.A.C. Holdings, Inc. have no parent corporations.  No publicly held corporation owns ten percent or more of any of these entities' stock.

# Table of Contents

Page

Corporate Disclosure Statement ........................................................... i

Table of Authorities ........................................................................ iv

Introduction ................................................................................... 1

Questions Presented ........................................................................ 6

Statement of the Case ...................................................................... 6

Reasons for Granting the Petition ...................................................... 9

I.    The District Court's Adoption of the *Affiliated Ute* Presumption of Reliance Raises an Important Legal Question About Which There Is a Compelling Need for Immediate Resolution ............... 10

II.   The District Court's Certification of the Class Despite Plaintiffs' Concealed Funding Agreement Raises Important Legal Questions About Class Actions That Should Be Answered Now ........................................................................... 14

III.  This Court Should Clarify How Damages Can Be Measured Under *Elkind* On a Classwide Basis ............................................ 18

Conclusion ..................................................................................... 20

# Table of Authorities

**Page**

**CASES**

*Affiliated Ute Citizens of Utah* v. *United States*,
406 U.S. 128 (1972) .............................................................................passim

*In re Agent Orange Prod. Liab. Litig.*,
611 F. Supp. 1452 (E.D.N.Y. 1985)............................................................18

*Charron* v. *Wiener*,
731 F.3d 241 (2d Cir. 2013) .......................................................................16

*Chiarella* v. *United States*,
445 U.S. 222 (1980) ...............................................................................3, 12

*Comcast Corp.* v. *Behrend*,
133 S. Ct. 1426 (2013)................................................................................19

*Eisen* v. *Carlisle & Jacquelin*,
417 U.S. 156 (1974) ....................................................................................15

*Elkind* v. *Liggett & Myers, Inc.*,
635 F.2d 156 (2d Cir. 1980) ........................................................5, 6, 18, 19

*Guse* v. *J.C. Penney Co.*,
409 F. Supp. 28 (E.D. Wis. 1976) .......................................................15, 16

*Hevesi* v. *Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004) ...............................................................9, 10, 14

*In re IPO Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006) .........................................................................14

*Jackson Nat'l Life Ins. Co.* v. *Merrill Lynch & Co.*,
32 F.3d 697 (2d Cir. 1994) .........................................................................13

*Levitt* v. *J.P. Morgan Sec., Inc.*,
710 F.3d 454 (2d Cir. 2013) .................................................................10, 11

*SEC* v. *MacDonald*,
568 F. Supp. 111 (D.R.I. 1983) ..................................................................19

*Maywalt* v. *Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995) ................................................................15, 16

*United States* v. *Newman*,
    773 F.3d 438 (2d Cir. 2014) ......................................................3, 11, 12, 13

*Norman D.D.S., P.C.* v. *ARCS Equities Corp.*,
    72 F.R.D. 502 (S.D.N.Y. 1976) ....................................................................16

*SEC* v. *Obus*,
    693 F.3d 276 (2d Cir. 2012) ................................................................passim

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    199 F.R.D. 119 (S.D.N.Y. 2001)....................................................................17

*Simon DeBartolo Grp., L.P.* v. *Richard E. Jacobs Grp., Inc.*,
    186 F.3d 157 (2d Cir. 1999) .........................................................................12

*Steginsky* v. *Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014) ......................................................2, 10, 12, 13

*Stephenson* v. *Dow Chem. Co.*,
    273 F.3d 249 (2d Cir. 2001) .........................................................................16

*Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) ................................................................................2, 13

*Sumitomo Copper Litig.* v. *Credit Lyonnais Rouse, Ltd.*,
    262 F.3d 134 (2d Cir. 2001) ................................................................passim

*United States* v. *Teicher*,
    987 F.2d 112 (2d Cir. 1993) ................................................................passim

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) .........................................................................14

*Wal-Mart Stores, Inc.* v. *Dukes*,
    131 S. Ct. 2541 (2011)...........................................................................13, 14

**STATUTES AND RULES**

Securities Exchange Act of 1934, § 10 (15 U.S.C. § 78j)...........................13, 19

Securities Exchange Act of 1934, § 20A (15 U.S.C. § 78t-1).................7, 13, 19

Fed. R. Civ. P. 23 ...................................................................................passim

**OTHER AUTHORITIES**

Bert I. Huang, *Litigation Finance: What Do Judges Need to Know?*, 45 Colum. J.L. & Soc. Probs. 525, 526 (2012) .........................16, 17

Defendants-Petitioners S.A.C. Capital Advisors, L.P., Point72 Capital Advisors, Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select Investments, LLC, and Steven A. Cohen (collectively, "SAC Defendants") respectfully petition under Fed. R. Civ. P. 23(f) for leave to appeal from a class certification order of the district court (Marrero, J.).

## Introduction

In this insider trading action, plaintiffs hope to represent a class of contemporaneous traders seeking to recover amounts in excess of the $602 million already recovered for their benefit by the government. Doing so, however, requires them to rewrite settled principles of securities and class action jurisprudence in order to show that common issues predominate as to reliance and damages. The district court accepted plaintiffs' view, undermining and creating confusion as to the application of the Supreme Court's decisions in *Chiarella* v. *United States* and *Affiliated Ute Citizens of Utah* v. *United States*, as well as this Court's recent decision in *United States* v. *Newman*, in private class actions. Moreover, the district court ruled that the existence of a litigation funding agreement entered into by plaintiffs' counsel has no bearing on the adequacy of representation of the class—despite the fact that counsel entered into it without the

knowledge of the class representatives, and without allowing discovery of the terms of the agreement to ascertain what degree of control over the class's litigation strategy counsel has relinquished to counsel's undisclosed financial backer. These rulings, which may never reach the Circuit except by a Rule 23(f) appeal, present a perfect candidate for interlocutory review.

*First*, the district court held that open-market, contemporaneous traders could prove the reliance element of their securities fraud claims on a classwide basis using the presumption of reliance set forth in *Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128 (1972). That presumption applies in securities fraud cases only where the alleged misconduct is an *omission*—a failure to disclose material non-public information by someone with a duty to disclose. *See, e.g.*, *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008). Here, however, as in many insider trading cases, defendants not only had no duty to disclose any information they allegedly possessed, but, rather, were under a specific legal obligation inherited from the tipper *not to disclose* any such information to anyone.

In cases such as this, this Court has emphasized that recipients of material non-public information have no duty to disclose, but rather only to abstain from trading. *See Steginsky* v. *Xcelera Inc.*, 741 F.3d 365, 370 (2d Cir. 2014); *SEC* v. *Obus*, 693 F.3d 276, 285 (2d Cir. 2012); *United States* v. *Teicher*, 987 F.2d 112,

120 (2d Cir. 1993). Plaintiffs must therefore demonstrate reliance on that improper activity—the trading—rather than reliance on an omission within the ambit of the *Affiliated Ute* presumption.

This Court has never addressed whether open-market traders can invoke the *Affiliated Ute* presumption of reliance where the alleged tippers or tippees had an affirmative obligation to the company *not* to disclose the alleged inside information. The district court held that *Affiliated Ute* applied, but it did so by inventing a new disclosure duty to the market as a whole that would arise *anytime* a tippee learns any confidential information. (Op. at 19.)[1] That ruling, however, is inconsistent with the long line of cases holding that a tippee inherits the duty of his tipper, and where the tipper is disabled from disclosing, the tippee is as well. *See, e.g.*, *Teicher*, 987 F.2d at 120 ("When the fiduciary is an insider who is not in a position to make a public announcement, the fiduciary must abstain. . . . [A] tippee acquire[s] the same duty as his fiduciary tipper."). And a duty to all market participants based on possession of material non-public information is inconsistent with *Chiarella v. United States*, 445 U.S. 222, 233 (1980), and *United States v. Newman*, 773 F.3d 438, 445–46 (2d Cir. 2014), *cert. denied*, 136 S. Ct. 242 (2015).

---

[1] Citations in the form "Op." refer to the district court's class-certification opinion dated December 2, 2015. Citations in the form "ECF No. __" refer to the district court docket entries in this action (S.D.N.Y. No. 12-cv-9350) unless otherwise noted.

Whether open-market traders can rely on a classwide presumption of reliance on omissions in light of the *Steginsky*, *Obus*, and *Teicher* line of cases is a fundamental issue affecting insider trading class actions. And it is not an issue that this Court is ever likely to address other than through a Rule 23(f) petition since so few civil insider trading class actions ever reach trial. This critical doctrinal issue needs definitive resolution by this Court.

*Second*, the district court's certification order creates new and dangerous precedent on another issue this Court has never addressed: the circumstances under which class counsel can satisfy the adequacy prong of Rule 23 even though they have entered into an undisclosed litigation funding arrangement. Pursuant to such an arrangement, plaintiffs' counsel may have differing goals and incentives than absent class members, and strategic decisions may be made by a litigation funder with a regard only to its own financial interests and no fiduciary obligations to the class. The district court refused to permit *any* discovery into the funding arrangement, even though the three class representatives themselves were unaware of its terms. These facts necessarily preclude a reliable finding as to the adequacy of class counsel or class representatives, and the error should be addressed now. The significant increase in litigation funding agreements in recent years creates a pressing need for this Court to resolve how they impact class actions. *See Sumitomo Copper Litig.* v. *Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139–40 (2d

4

Cir. 2001) (noting that Rule 23(f) review is appropriate where addressing an issue will meaningfully advance "the development of the law of class actions.").

*Third*, this Court should clarify a question about classwide damages left open by *Elkind* v. *Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980). *Elkind* holds that contemporaneous traders may recover for declines in market value of their shares up to the earlier of "the time [the plaintiffs] learned the tipped information *or* at a reasonable time after it became public." *Id.* at 172 (emphasis added). The first alternative renders class treatment impossible because it requires a subjective inquiry into when each individual plaintiff learned of the newly disclosed information. The second alternative leaves open the question of how to measure a "reasonable time" after the information became public. Here, even though both plaintiffs and the SAC Defendants agree that the price impact of the alleged inside information was fully reflected in the market value of shares within 24 hours of public disclosure, plaintiffs nonetheless seek over a hundred million dollars in additional damages based on subsequent price declines, resulting from unrelated news, that admittedly occurred *after* the market value of shares fully reflected the alleged inside information, on the theory that some traders needed more time to "digest" the information. That cannot be what *Elkind* meant. The question of how to interpret a "reasonable time" on a classwide basis is a critical issue that needs a uniform answer.

## Questions Presented

Whether this Court should grant a petition for review pursuant to Rule 23(f) where the district court's order implicates the following legal questions about which there is a compelling need for immediate resolution:

1. Whether Rule 23(b)(3)'s predominance requirement can be satisfied by the presumption of reliance set forth in *Affiliated Ute Citizens of Utah* v. *United States*, 406 U.S. 128 (1972), where defendants did not owe contemporaneous trader plaintiffs any duty to disclose and, rather, were prohibited from doing so?

2. Whether a district court can properly assess the adequacy of class representatives and class counsel where an undisclosed litigation funding arrangement with an unknown funder may be guiding plaintiffs' litigation decisions and jeopardizing the integrity of the representation of absent class members?

3. What constitutes an objective, classwide theory of damages under *Elkind* v. *Liggett & Myers, Inc.*, 635 F.2d 156 (2d Cir. 1980)?

## Statement of the Case

This case concerns alleged insider trading in Elan stock for which the SAC Defendants have already disgorged to the SEC more than twice their profits and losses avoided. In 2014, without admitting or denying liability, the SAC

6

Defendants paid $602 million to the SEC to settle *SEC* v. *CR Intrinsic Investors, LLC*. The SEC has established a Fair Fund to distribute that money to affected shareholders. *See* Order to Establish a Fair Fund for Investor Victims, *SEC* v. *CR Intrinsic Investors, LLC*, No. 12 Civ. 8466 (S.D.N.Y. Jan. 26, 2015) (ECF No. 84).

Under § 20A of the Securities Exchange Act of 1934, plaintiffs' damages may not exceed the defendants' "profit gained or loss avoided in the transaction or transactions that are the subject of the violation." 15 U.S.C. § 78t-1(b)(1). And the damages imposed "shall be diminished by the amounts, if any, that such person may be required to disgorge" to the SEC. 15 U.S.C. § 78t-1(b)(2). There is no dispute that the SAC Defendants are entitled to such a set-off here.

Plaintiffs nonetheless bring this case, seeking amounts beyond what they will receive from the Fair Fund, on the theory that the government did not obtain full disgorgement from the SAC Defendants. Plaintiffs seek to represent two classes of "contemporaneous traders" who traded Elan stock in the open market at various times from August 2006 through July 2008. The district court certified two classes: (1) Sellers of Elan shares from August 23, 2006 to July 18, 2008 ("Elan Seller Class"), during which period the SAC Defendants were accumulating shares of Elan allegedly based on positive material non-public information; and (2) purchasers of Elan shares and call options, or sellers of put options, from July 21, 2008 to July 29, 2008, at 4:00 p.m. EDT ("Elan Buyer Class"), during which

7

period the SAC Defendants were selling shares of Elan allegedly based on negative material non-public information. (*See* Op. at 2–4).

Plaintiffs allege that two doctors involved in a joint Elan/Wyeth clinical trial—Dr. Sidney Gilman and Dr. Joel Ross—provided material non-public information to a former employee of one of the SAC Defendants, Mathew Martoma. Both doctors had non-disclosure agreements pursuant to which they were obligated to maintain the confidentiality of any information obtained through the clinical trial. (*See* ECF No. 218, Ex. 2 (Gilman); *id.* Ex. 3 (Ross).) Plaintiffs allege that the SAC Defendants built up a long position in Elan shares in the period from August 2006 to July 19, 2008, which was then unwound after Martoma learned the upcoming results of a July 29, 2008 presentation (the "ICAD Presentation"). After the ICAD Presentation, Elan shares fell swiftly and dramatically. Plaintiffs' expert has agreed that the price of Elan shares fully reflected the information disclosed at the ICAD Presentation within 24 hours. (*See* ECF No. 234, Ex. 7, at ¶ 3.)

The theory on which the Elan Buyer Class seeks additional damages beyond what the SAC Defendants have already disgorged to the SEC is that the SAC Defendants did not disgorge any losses they avoided by having sold their stock prior to an unrelated drop in Elan's stock price that occurred three days *after* the ICAD Presentation, on August 1, 2008. That drop was due to a completely

separate announcement regarding problems with a different Elan drug, Tysabri (the "Tysabri Drop"). Plaintiffs do not allege the SAC Defendants had any inside information regarding the Tysabri Drop. Nevertheless, plaintiffs allege that they are entitled to recover over a hundred million dollars related to the Tysabri Drop because, they claim, it occurred while some traders were still absorbing the news of the ICAD Presentation.

## Reasons for Granting the Petition

This Court has "unfettered discretion" to grant a Rule 23(f) petition "based on any consideration that the court of appeals finds persuasive." *Hevesi* v. *Citigroup Inc.*, 366 F.3d 70, 76 (2d Cir. 2004) (internal quotation marks omitted). Rule 23(f) review is typically granted when "(1) [] the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) [] the certification order implicates a legal question about which there is a compelling need for immediate resolution." *Sumitomo*, 262 F.3d at 139–40.

As set forth below, the district court's certification order raises three legal questions that are fundamental to the law of insider trading class actions and present a compelling need for immediate resolution. These issues are likely to escape review by this Court other than through a Rule 23(f) petition.

The magnitude of damages plaintiffs seek (hundreds of millions of dollars)

9

is further reason to grant the petition: "The effect of a class certification in inducing settlement to curtail the risk of large awards provides a powerful reason to take an interlocutory appeal." *Hevesi*, 366 F.3d at 80 (internal quotation marks omitted).

## I. The District Court's Adoption of the *Affiliated Ute* Presumption of Reliance Raises an Important Legal Question About Which There Is a Compelling Need for Immediate Resolution

The district court's adoption of the *Affiliated Ute* presumption of reliance raises a critical doctrinal issue about insider trading law that needs definitive resolution by this Court. The district court granted certification because it found that contemporaneous traders could prove reliance on a classwide basis under *Affiliated Ute*, even though the alleged tippees in this case inherited from their tippers a specific duty *not* to disclose the alleged inside information.

This Court's clear guidance is necessary on the applicability of *Affiliated Ute* in light of this Court's decisions holding that a recipient of inside information who lacks the legal right to disclose such information has no duty to "disclose or abstain," but rather only a duty to abstain. *See Obus*, 693 F.3d at 285 ("[I]f disclosure is . . . prohibited by business considerations or by law, the duty to is to abstain from trading."); *Steginsky*, 741 F.3d at 370 (same). If the defendants had no duty to disclose, certification was improper: "absent a duty to disclose, there can be no material omission under § 10(b), precluding [plaintiffs] from invoking

10

the presumption of reliance of *Affiliated Ute* and thereby satisfying the predominance requirement of Rule 23(b)(3)." *Levitt* v. *J.P. Morgan Sec., Inc.*, 710 F.3d 454, 468 (2d Cir. 2013). This issue is determinative of the viability of class actions in many insider trading cases.

The district court, in sustaining plaintiffs' invocation of *Affiliated Ute*, invented a novel duty of disclosure by a tippee, in which "the duty to disclose arises where an insider tipper has breached his fiduciary duty to the shareholders by disclosing the information to the tippee." (Op. at 18–19.) According to the district court, "such obligation is not linked to whether or not disclosure by the tipper was feasible. It is the breach of trust and confidence between the insider tipper and the company that gives rise to the tippee's duty to disclose material, nonpublic information in advance of trading." (*Id.* at 19.) That reasoning, however, ignores the repeated holdings by this Court that a tippee inherits only the duties of the tipper. *See Teicher*, 987 F.2d at 120 ("When the fiduciary is an insider who is not in a position to make a public announcement, the fiduciary must abstain. . . . [A] tippee acquire[s] the same duty as his fiduciary tipper."); *Obus*, 693 F.3d at 287–88 ("In such a case, the tippee is said to 'inherit' the tipper's duty to abstain or disclose."); *see also Newman*, 773 F.3d at 447. Indeed, as this Court recently emphasized in *Newman*, the relevant duty in outsider-tippee cases is owed *not* to the other transacting party, but *to the corporation*, to refrain from converting

11

inside information for personal use. *See* 773 F.3d at 446–50 (describing requirements for outsider-tippee to inherit insider-tipper's duty to abstain from trading). The district court thus created a duty of tippees to the market as a whole, despite the repeated holdings of the Supreme Court and this Court that no such duty to the market exists. *See, e.g.*, *Chiarella*, 445 U.S. at 231; *Newman*, 773 F.3d at 445.[2]

The district court's ruling creates doctrinal uncertainty that goes to the maintainability of class actions in insider trading cases in the common scenario where a trader lacks the right to disclose the inside information. Here, for example, the alleged tippers—Drs. Gilman and Ross—were under duties to Elan and Wyeth *not to disclose* non-public information, by virtue of their confidentiality

---

[2] The case cited by the district court to support its holding—*Simon DeBartolo Group, L.P.* v. *Richard E. Jacobs Group, Inc.*, 186 F.3d 157 (2d Cir. 1999)—is off point. *DeBartolo* concerned whether an insider trading claim was sufficiently frivolous to impose Rule 11 sanctions. This Court wrote that "reliance may be presumed upon a showing that the omitted information was material" and that "[t]his rule applies in the context of an insider trading claim," *id.* at 173, but it was not asked to, and did not, address the issue of whether, in insider trading cases where the defendant was obligated *not* to disclose, the relevant duty is one of disclosure or solely one to abstain from trading. Since *DeBartolo*, this Court's decisions in *Steginsky*, 741 F.3d at 370, and *Obus*, 693 F.3d at 285, directly addressed that issue and held that where disclosure is prohibited, the relevant duty is solely to abstain from trading. The general language of *DeBartolo* cannot be read to answer a question that was neither presented to nor ruled upon by this Court—and in any event has since been specifically addressed by this Court in a manner inconsistent with the district court's reading.

agreements. *See Obus*, 693 F.3d at 285; *Steginsky*, 741 F.3d at 370. The tippee,

Mathew Martoma—and, indirectly, the SAC Defendants—would have inherited

this duty of confidentiality and also been disabled from disclosing. *See Teicher*,

987 F.2d at 120 ("[A] tippee acquire[s] the same duty as his fiduciary tipper.");

*accord Newman*, 773 F.3d at 446. Accordingly, any tippees of Drs. Gilman and

Ross were prohibited from disclosing any material non-public information they

possessed, and the *Affiliated Ute* presumption—which depends on a nonexistent

duty to disclose—does not apply.

Without the *Affiliated Ute* presumption, no class can be certified here.

Plaintiffs' claims under Sections 10(b) and 20A require, *inter alia*, proof that their

trades were made in reliance on the alleged fraud by defendants.[3] *See Stoneridge*,

552 U.S. at 159; *Jackson Nat'l Life Ins. Co.* v. *Merrill Lynch & Co.*, 32 F.3d 697,

703–04 (2d Cir. 1994). It is well-established that in a putative securities fraud

class action, individual questions of reliance will predominate over common

questions—thereby preventing class certification under Rule 23(b)(3)—absent a

presumption of reliance applicable on a classwide basis. *See, e.g., Wal-Mart*

*Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011) (describing importance of

---

[3]   Plaintiffs have conceded that they must prove reliance. (*See* ECF No. 192, at
      15–16 (Plaintiffs' class-certification brief).) The district court also recognized
      that reliance is a required element of these claims. (*See* Op. at 15 ("Kaplan
      Plaintiffs' claims under Section 10(b) of the Exchange Act require proof . . .
      that the plaintiff's reliance was the proximate cause of its injury.").)

13

presumption of reliance to class certification in securities fraud cases); *Hevesi*, 366
F.3d at 77–81 (granting Rule 23(f) petition challenging district court's application
of presumption of reliance in securities fraud class action); *see also In re U.S.
Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013); *In re IPO Sec.
Litig.*, 471 F.3d 24, 42–43 (2d Cir. 2006). Without such a presumption, plaintiffs
would have to demonstrate that they relied on a breach of defendants' duty *to
abstain from trading*, *i.e.*, that plaintiffs were aware of and relied on the SAC
Defendants' trading activity in making their own investment decisions. That
question is typically individualized and is not generally susceptible of classwide
proof.

The issue of whether insider trading can be treated as a failure to make a
required disclosure when the defendant was disabled from disclosing is therefore
critical to the development of the law of insider trading class actions. There is a
compelling need for resolution by this Court. *See Sumitomo*, 262 F.3d at 139–40.

## II.    The District Court's Certification of the Class Despite Plaintiffs'
Concealed Funding Agreement Raises Important Legal Questions
About Class Actions That Should Be Answered Now

The certification order also raises a novel question about how litigation
funding arrangements may be reconciled with the class certification analysis.
Though litigation funding arrangements are becoming far more common, this
Court has not previously addressed this issue. Its immediate review is particularly

required because the approach adopted by the district court sets new and inadvisable precedent. Under the district court's approach, plaintiffs' counsel and litigation funders are free to reach any agreement they choose and shield it from scrutiny—even from the class representatives. Such an agreement may provide a level of control over a class action to a third-party funder motivated only by its own financial interests, and that has no fiduciary duty to the class. This "novel" legal question "compel[s] immediate review" because "it is of fundamental importance to the development of the law of class actions and it is likely to escape effective review after entry of final judgment." *Sumitomo*, 262 F.3d at 139–40.

The terms of a litigation funding agreement may bear on several aspects of the Rule 23 analysis. In order to be adequate representatives under Rule 23(a)(4), class representatives and class counsel must not have conflicts with the class. *Maywalt* v. *Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995). Class representatives and class counsel must also be able to fund the action. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv) (requiring court to consider, in appointing class counsel, "the resources that counsel will commit to representing the class"); *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 166–70, 178–79 (1974); *Guse* v. *J.C. Penney Co.*, 409 F. Supp. 28, 30–31 (E.D. Wis. 1976) (compelling discovery about resources of class counsel because "for purposes of Rule 23(a)(4), the relevant inquiry concerning the ability to fund the costs of a class action focuses upon the

assets of the plaintiff's attorneys"), *rev'd on other grounds*, 562 F.2d 6 (7th Cir.

1977). The district court must find that the proposed class counsel and class

representatives satisfy these requirements, and it bears the "'ultimate responsibility

to ensure that the interests of class members are not subordinated to the interests of

either the class representatives or class counsel.'" *Charron* v. *Wiener*, 731 F.3d

241, 248 (2d Cir. 2013) (quoting *Maywalt*, 67 F.3d at 1078). It is therefore vital

for the court, absent class members, and defendants alike to know whether class

counsel have subordinated the interests of the class to a litigation funder.[4] *Cf.*

*Norman D.D.S., P.C.* v. *ARCS Equities Corp.*, 72 F.R.D. 502, 504 (S.D.N.Y. 1976)

("We are reluctant to permit a plaintiff to conduct litigation as a class

representative, on the understanding that a related party will voluntarily pay the

litigation expenses from time to time as they become due.").

The potential conflicts raised when class counsel relies on a litigation

funding agreement are significant, and are likely to arise with greater frequency

given the recent growth of the litigation finance industry. *See* Bert I. Huang,

---

[4] Allowing a class action such as this to proceed without adequate representatives could damage the integrity of any future settlement or judgment, and require further review by this Court on direct appeal or collateral attacks, years later, after significant time, expenses, and judicial resources have been lost. *See, e.g.*, *Stephenson* v. *Dow Chem. Co.*, 273 F.3d 249, 258–61 (2d Cir. 2001) (allowing collateral attack on class action settlement because absent class members had not been adequately represented), *vacated in part on other grounds*, 539 U.S. 111 (2003).

*Litigation Finance: What Do Judges Need to Know?*, 45 Colum. J.L. & Soc. Probs.

525, 526 (2012) ("[T]he use of 'alternative litigation financing' or 'third-party

litigation funding' in the United States appears to be growing." (citations omitted)).

Here, plaintiffs' counsel admitted that they have been partially funding this

case through a non-party litigation funder, (*see* ECF No. 203, Ex. E, at 2), but

objected to any discovery into the funder's identity or the terms of the

arrangement. Further, at depositions in this case, it became apparent that none of

the three proposed class representatives knew the identity of the funder or the

terms of the arrangement. (*See* ECF No. 218, Ex. 4, at 153:3–154:20

(Muensterman); *id.* Ex. 5, at 188:9–190:8 (Ross); *id.* Ex. 6, at 278:22–288:12

(Hsu).)[5] The SAC Defendants moved to compel additional discovery into the

terms of the funding arrangement, but their motion was denied. (*See* ECF No. 187

(SAC Defendants' brief in support of motion to compel); ECF No. 222, at 5–10

(Magistrate Judge Fox's decision); ECF No. 223 (adopting Magistrate Judge Fox's

decision); ECF No. 225 (denying SAC Defendants' request for further briefing).)

The district court did not even conduct *in camera* review of the funding agreement.

---

[5] Although one of the lead plaintiffs in this action, David Kaplan, was apparently aware of the terms of the litigation funding agreement, (*see* ECF No. 234, Ex. 9, Ex. 2, at 291:7–292:14 (deposition of David E. Kaplan)), he is not a class representative and is no longer in control of the case. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 125 (S.D.N.Y. 2001) ("[T]he class representative is going to control the case. He is the Rule 23 fiduciary, not the lead plaintiffs." (internal quotation marks omitted)).

In its certification order, the district court found class counsel to be adequate based merely on their bare "representations of their commitment to vigorously prosecute this action and to devote all necessary resources to it." (Op. at 12–13.) The district court dismissed concerns about the secret terms of the undisclosed litigation funding agreement, stating that "mere speculation is insufficient" to show inadequacy. (*Id.*) But it was only because the district court itself had blocked all inquiry into the terms of the agreement that the SAC Defendants could not address the specifics of that secret arrangement.

This Court should address whether plaintiffs' counsel's litigation funding agreement is fair ground for scrutiny in determining compliance with the requirements of Rule 23.[6] This issue is critical to the "development of the law of class actions," *Sumitomo*, 262 F.3d at 139–40, and the district court's grant of carte blanche to plaintiffs' counsel sets a dangerous precedent.

### III. This Court Should Clarify How Damages Can Be Measured Under *Elkind* On a Classwide Basis

This Court should clarify how a class of contemporaneous traders can plead and prove a classwide theory of damages. This Court's decision in *Elkind* remains,

---

[6] As Judge Weinstein has written in an analogous context, "[a] 'sunshine' rule is essential to protect the interests of the public, the class and the honor of the legal profession." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1452, 1453–54 (E.D.N.Y. 1985), *rev'd on other grounds*, 618 F.2d 216 (2d Cir. 1987).

after thirty-five years, the leading case on damages in civil insider trading cases under § 10(b), but it does not provide clarity as to how damages may be measured on a classwide basis.[7]

*Elkind* holds that contemporaneous traders may recover for the postpurchase decline in market value of their shares cutting off at the earlier of "the time [the plaintiffs] learned the tipped information *or* at a reasonable time after it became public." *Id.* at 172 (emphasis added). The first alternative requires an evidentiary inquiry into when each individual plaintiff learned of the disclosed information, and so would render class certification impossible. *See Comcast Corp.* v. *Behrend*, 133 S. Ct. 1426, 1432–33 (2013). The second fails to provide guidance to district courts as to how to measure a "reasonable time." Indeed, as the cases plaintiffs have relied on make clear, courts have addressed this "reasonable time" measurement in divergent ways, leading to inconsistent results. *Compare, e.g.*, *Elkind*, 635 F.2d at 173 (one day), *with SEC* v. *MacDonald*, 568 F. Supp. 111, 112–13 (D.R.I. 1983) (approximately two weeks) (cited in ECF No. 138, at 13 (plaintiffs' brief in opposition to defendants' motions to dismiss)).

The method proposed by plaintiffs here, and accepted by the district court

---

[7]  The fact that the Second Circuit has not revisited *Elkind*'s holding in over thirty years demonstrates that it is unlikely to arise other than through 23(f) review. Section 20A does not address this issue either—it provides an upper limit on damages, but does not address how damages below that limit are to be calculated. *See* 15 U.S.C. § 78t-1.

for the purpose of its class certification analysis, (*see* Op. at 20–22), is illogical. Even though plaintiffs acknowledge that the price of Elan shares fully reflected the alleged inside information disclosed at the ICAD Presentation within twenty-four hours, (*see* ECF No. 234, Ex. 7, at ¶ 3), they nevertheless argue that a "reasonable time" can be measured based on the duration of elevated trading volume because such volume suggests that *some* traders needed more time to digest the information and decide whether to sell. (*See* ECF No. 233, at 9–10 (Plaintiffs' class-certification reply brief).) This proposed classwide method is not only subjective and individualized, but is transparently designed for plaintiffs to reap a windfall of over a hundred million dollars from *unrelated* declines in Elan's stock price *after* the information from the ICAD Presentation was fully incorporated into the market price. The arbitrariness of this method underscores the need for this Court to provide guidance on how to apply *Elkind* and how, if at all, damages can be measured on a classwide basis in insider trading class actions.

### Conclusion

The SAC Defendants' petition should be granted.

Dated:  New York, New York
        December 16, 2015

PAUL, WEISS, RIFKIND, WHARTON          WILLKIE FARR & GALLAGHER
& GARRISON LLP                          LLP

By: _____          By: _____
        Daniel J. Kramer                        Martin B. Klotz
        Charles E. Davidow                      Michael S. Schachter
        Marc Falcone                            Sameer Advani
        Audra J. Soloway
        Geoffrey Chepiga

1285 Avenue of the Americas              787 Seventh Avenue
New York, NY 10019-6064                   New York, NY 10019-6099
(212) 373-3000                            (212) 728-8102
dkramer@paulweiss.com                     mklotz@willkie.com
cdavidow@paulweiss.com                    mschachter@willkie.com
mfalcone@paulweiss.com                    sadvani@willkie.com
asoloway@paulweiss.com
gchepiga@paulweiss.com

*Attorneys for Defendants S.A.C. Capital Advisors, L.P., Point72 Capital Advisors,
Inc., CR Intrinsic Investors, LLC, CR Intrinsic Investments, LLC, S.A.C. Capital
Advisors, LLC, Point72 Associates, LLC, Point72 Strategies, LLC, Point72 Select
Investments, LLC, and Steven A. Cohen*

21

## Certificate of Service

I, Daniel J. Kramer, hereby certify that on December 16, 2015, I caused to

be served a true and correct copy of PETITION OF DEFENDANTS-

PETITIONERS S.A.C. CAPITAL ADVISORS, L.P., ET AL., FOR PERMISSION

TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

on the following counsel via email pursuant to an agreement between the parties:

> Ethan David Wohl
> Krista Thomas Rosen
> Sara Jean Wigmore
> Wohl & Fruchter LLP
> 570 Lexington Avenue, 16th Floor
> New York, NY 10022
> (212) 758-4000
> Fax: (212) 758-4004
> ewohl@wohlfruchter.com
> krosen@wohlfruchter.com
> swigmore@wohlfruchter.com
>
> Deborah Clark-Weintraub
> Joseph Peter Guglielmo
> Thomas Livezey Laughlin, IV
> Max Raphael Schwartz
> Scott + Scott LLP
> 405 Lexington Avenue
> 40th Floor
> New York, NY 10174
> (212) 223-6444
> Fax: (212) 223-6334
> dweintraub@scott-scott.com
> jguglielmo@scott-scott.com
> tlaughlin@scott-scott.com
> mschwartz@scott-scott.com

Emma Gilmore
Marc Ian Gross
Tamar Aliza Weinrib
Pomerantz LLP
600 Third Ave, 20th Floor
New York, NY 10016
(212) 661-1100
Fax: (212) 661-8665
egilmore@pomlaw.com
migross@pomlaw.com
taweinrib@pomlaw.com

Francesco P. Trapani
Peter J. Kreher
Kreher & Trapani LLP
1325 Spruce Street
Philadelphia, PA 19107
(215) 907-7290
Fax: (215) 907-7287
frank@krehertrapani.com
pete@krehertrapani.com

David P. Abel
Gregg Steven Levin
Joshua C. Littlejohn
Meredith B. Miller
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
Fax: (843) 216-9450
dabel@motleyrice.com
glevin@motleyrice.com
jlittlejohn@motleyrice.com
mbmiller@motleyrice.com

*Counsel for Plaintiffs*

Daniel Prugh Roeser
Larkin M. Morton
Richard Mark Strassberg
Goodwin Procter, LLP
The New York Times Building, 620 Eighth Avenue
New York, NY 10018
(212) 813-8800
Fax: (212) 355-3333
droeser@goodwinprocter.com
lmorton@goodwinprocter.com
rstrassberg@goodwinprocter.com

John Owen Farley
Roberto M. Braceras
Goodwin Procter, LLP
Exchange Place, 53 State Street
Boston, MA 02109
(617) 570-1000
Fax: (617) 523-1231
jfarley@goodwinprocter.com
rbraceras@goodwinprocter.com

*Counsel for Defendant Mathew Martoma*

Dated:     December 16, 2015

_____
Daniel J. Kramer

# SPECIAL APPENDIX

SPA-1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
DAVID E. KAPLAN, et al.,                    :
                                            :  12-cv-9350 (VM)
                Plaintiffs,                 :
                                            :
    -against-                               :
                                            :
S.A.C. CAPITAL ADVISORS, L.P, et al.,       :
                                            :
                Defendants.                 :
------------------------------------------X
BIRMINGHAM RETIREMENT AND RELIEF            :
SYSTEM, et al.,                             :  13-cv-2459 (VM)
                Plaintiffs,                 :
                                            :
    -against-                               :  **DECISION AND ORDER**
                                            :
S.A.C. CAPITAL ADVISORS, L.P., et al.,      :
                                            :
                Defendants.                 :
------------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Lead Plaintiffs David E. Kaplan, and others, individually and on behalf of a putative class of investors in Elan Corporation securities ("Elan Investor Class," collectively "Kaplan Plaintiffs") in Case No. 12-cv-9350, brought this action against defendants S.A.C. Capital Advisors, L.P. ("SAC LP"), S.A.C. Capital Advisors, Inc., CR Intrinsic Investors LLC ("CR Intrinsic"), CR Intrinsic Investments, LLC, S.A.C. Capital Advisors, LLC ("SAC LLC"), S.A.C. Capital Associates, LLC, S.A.C. International Equities, LLC, S.A.C. Select Fund, LLC, and Steven Cohen

- 1 -

SPA-2

("Cohen") (collectively, "SAC"); and defendant Mathew Martoma ("Martoma").[1] Kaplan Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 ("Rule 10b-5"), violations of Section 20A of the Exchange Act, 15 U.S.C. § 78t-1 ("Section 20A"), and violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("Section 20(a)").

Kaplan Plaintiffs, along with other plaintiffs[2] who are no longer pursuing class certification, filed their original motion for class certification on June 29, 2015. (Dkt. No. 191.) Kaplan Plaintiffs now move, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), to certify the "Elan Seller Class," which consists of:

> All persons who sold American Depositary Receipts
> ("ADRs") of Elan contemporaneously with Defendants'
> purchases of Elan ADRs during the period August 23,
> 2006 through and including July 18, 2008 (the 'Elan
> Seller Class Period'), and were damaged thereby.[3]

---

[1] Kaplan Plaintiffs also filed claims against defendant Sidney Gilman ("Gilman"), but those claims were voluntarily dismissed. (Dkt. No. 232.)

[2] Lead Plaintiffs City of Birmingham Retirement and Relief System, et al., individually and on behalf of a putative class of investors in Wyeth securities ("Wyeth Investor Class") in Case No. 13-cv-2459, sought certification of the Wyeth Investor Class in the original motion and are no longer seeking class certification. This Decision, therefore, addresses only Kaplan Plaintiffs' request for certification of the Proposed Elan Classes.

[3] Excluded from the Class are defendants herein, the employees, officers and directors of SAC during the applicable Class Period, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

Case 15-4067, Document 1, 12/16/2015, 1667891, Page35 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 3 of 25

SPA-3

Plaintiff's Memorandum of Law in Support of Motion for Class Certification, dated June 29, 2015. ("Pl. Mem.")(Dkt. No. 192 at 2.)

Kaplan Plaintiffs also move pursuant to Rule 23 to certify the "Elan Buyer Class", which consists of:

> All persons who purchased ADRs of Elan, purchased call options thereon, or sold put options thereon, contemporaneously with Defendants' sales of Elan ADRs, sale of call options thereon, or purchase of put options thereon, during the period July 21, 2008 through and including July 29, 2008 at 4:00 pm EDT (the 'Buyer Class Period'), and were damaged thereby.[4]

(Id. at 2.) (collectively, the Elan Buyer Class with the Elan Seller Class, "Proposed Elan Classes".)

Kaplan Plaintiffs also move pursuant to Rule 23 for the Court to appoint Chi Pin Hsu, Gary W. Muensterman, and Fred M. Ross (collectively, "Proposed Class Representatives") as Class Representatives for the Proposed Elan Classes and to appoint Co-Lead Counsel Wohl & Fruchter LLP ("Wohl & Fruchter") and Pomerantz LLP ("Pomerantz", collectively "Proposed Class Counsel") as Class Counsel for the Proposed Elan Classes.

---

[4] The Elan Buyer Class has the same exclusions as the Elan Seller Class.

SPA-4

The Court has reviewed the parties' submissions regarding this matter.[5] For the reasons discussed below, the Court finds that the Proposed Elan Classes satisfy all of the requirements of Rule 23(a) and the pertinent requirements of Rule 23(b). These classes are subject to further adjustment or decertification if warranted as facts develop. The Court further finds that Proposed Class Counsel satisfy the pertinent requirements of Rule 23(g). Accordingly, Kaplan Plaintiffs' motion for certification of the Proposed Elan Classes and appointment of Proposed Class Representatives and Proposed Class Counsel is GRANTED.

## I. BACKGROUND

The Court has previously addressed in detail the facts surrounding SAC's involvement in insider trading of Elan Corporation and Wyeth securities during the clinical trials of the drug bapineuzamab ("bapi") in its Decision and Order dated August 13, 2014 (Dkt. No. 152.)

Briefly restated, SAC employee Mathew Martoma obtained inside information regarding bapi's clinical trials through relationships he cultivated with Sidney Gilman ("Gilman") and

---

[5] The Court has reviewed Kaplan Plaintiffs' submissions in support of their motion (Pl.'s Mem., dated June 29, 2015, Dkt. No. 191; Pl. Reply Mem. of Law in Supp. of Mot. For Class Cert ("Pl. Reply Mem."), dated October 27, 2015, Dkt. No 233), and SAC's submission in opposition to Plaintiff's motion (Def.'s Mem. of Law in Opp. to Mot. for Class Cert. ("Def. Mem."), dated August 28, 2015, Dkt. No. 217), as well as the documents accompanying these memoranda. Unless specifically quoted, no further citation to these documents will be made.

- 4 -

Case 15-4067, Document 1, 12/16/2015, 1667891, Page37 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 5 of 25

SPA-5

Joel Ross ("Ross"), two doctors who were supervising the trials. Martoma allegedly provided reports containing this inside information to Steven Cohen -- SAC's founder, CEO, and owner. SAC then traded on the nonpublic information Martoma had provided, first by accumulating large positions in Elan and Wyeth and later by selling those positions just before the companies publicly disclosed negative results of the clinical trials. The negative results of the clinical trials subsequently triggered major selling and a corresponding drop in the market value of Elan and Wyeth securities.

## II.  PROCEDURAL HISTORY

By Order dated April 15, 2013, the Court designated David Kaplan, Roxy Sullivan, Lindsey Rankin, Michael Allen, and Chi-Pin Hsu as Lead Plaintiffs and Wohl & Fruchter and Pomerantz as Co-Lead Counsel for the Elan Investor Class. (Dkt. No. 45.) Kaplan Plaintiffs filed their motion for certification of the Proposed Elan Classes, appointment of Proposed Class Representatives as Class Representatives, and appointment of Proposed Class Counsel as Class Counsel on June 29, 2015. (Dkt. No. 191.)

## III. DISCUSSION

A.   CLASS CERTIFICATION

To certify the Proposed Class, Kaplan Plaintiffs must satisfy all four of the requirements of Rule 23(a) and one of

Case 15-4067, Document 1, 12/16/2015, 1667891, Page38 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 6 of 25

SPA-6

the categories of Rule 23(b)(3). See <u>In re Livent Noteholders</u>
<u>Sec. Litig.</u>, 210 F.R.D. 512, 514 (S.D.N.Y. 2002).

To meet Rule 23(a)'s prerequisites, a plaintiff must
demonstrate that:

> (1) the class is so numerous that joinder of all
> members is impracticable; (2) there are questions
> of law or fact common to the class; (3) the claims
> or defenses of the representative parties are
> typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) further requires that
the plaintiff demonstrate that common questions of law or
fact "predominate over any questions affecting only
individual members" and that maintaining a class action "is
superior to other available methods" of adjudication. Fed. R.
Civ. P. 23(b)(3).

Trial courts are given substantial discretion in
determining whether to grant class certification because
"'the district court is often in the best position to assess
the propriety of the class and has the ability . . . to alter
or modify the class, create subclasses, and decertify the
class whenever warranted.'" <u>In re Nigeria Charter Flights</u>
<u>Contract Litig.</u>, 233 F.R.D. 297, 301 (E.D.N.Y. 2006) (<u>quoting</u>
<u>In re Sumitomo Copper Litig.</u>, 262 F.3d 134, 139 (2d Cir.
2001)). The Second Circuit has directed courts to adopt a
liberal interpretation of Rule 23 in order to maximize the

Case 15-4067, Document 1, 12/16/2015, 1667891, Page39 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 7 of 25

SPA-7

benefits to both private parties and to the public provided
by class actions. See In re Sumitomo Copper Litig., 182 F.R.D.
85, 88-89 (S.D.N.Y. 1998); see also Eisen v. Carlisle and
Jacquelin, 391 F.2d 555, 563 (2d Cir. 1968) ("[Rule 23] should
be given a liberal rather than a restrictive
interpretation."). As the Second Circuit stated in Green v.
Wolf Corp., "'[I]f there is to be an error made, let it be in
favor and not against the maintenance of the class action,
for it is always subject to modification should later
developments during the course of the trial so require.'" 406
F.2d 291, 298 (2d Cir. 1968) (quoting Esplin v. Hirshi, 402
F.2d 94, 99 (10th Cir. 1968)).

1.   Rule 23(a) Requirements

a.   Numerosity

Rule 23(a)(1) requires that the class be so large that
joinder of all members would be impracticable (the
"Numerosity Requirement"). See In re Drexel Burnham Lambert
Grp., Inc., 960 F.2d 285, 290 (2d Cir. 1992). The Second
Circuit has observed that "numerosity is presumed at a level
of 40 members," Consolidated Rail Corp. v. Town of Hyde Park,
47 F.3d 473, 483 (2d Cir. 1995), though plaintiffs need not
provide evidence of an exact class size to establish
numerosity. See Robidoux v. Celani, 987 F.2d 931, 935 (2d
Cir. 1993).

- 7 -

SPA-8

SAC does not dispute numerosity in their opposition. Thus, the Court finds that the Proposed Class meets the Numerosity Requirement of Rule 23(a)(1).

b. <u>Commonality of Law or Fact Questions</u>

Rule 23(a)(2) requires that the putative class members' claims must share common questions of fact or law (the "Commonality Requirement"). The Commonality Requirement has been characterized as a "low hurdle." <u>McIntire v. China MediaExpress Holdings, Inc.</u>, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014)(citation omitted). Commonality requires only a showing that plaintiffs' claims "depend upon a common contention . . . [that is] of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2545 (2011). The requirement is "plainly satisfied" in a securities case where "the alleged misrepresentations in the prospectus relate to all the investors, [because the] existence and materiality of such misrepresentations obviously present important common issues." <u>Korn v. Franchard Corp.</u>, 456 F.2d 1206, 1210 (2d Cir. 1972).

Kaplan Plaintiffs propose multiple common questions of law and fact including, but not limited to, whether the inside

- 8 -

Case 15-4067, Document 1, 12/16/2015, 1667891, Page41 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 9 of 25

SPA-9

information supplied to SAC was material and whether SAC acted with the requisite state of mind. SAC does not dispute commonality in their opposition papers. Accordingly, because Kaplan Plaintiffs allege misconduct that is common to all members of the Proposed Elan Classes, requiring the same findings of fact and law, the Commonality Requirement of Rule 23(a)(2) is satisfied.

    c.  <u>Typicality</u>

    Rule 23(a)(3) requires that Kaplan Plaintiffs' claims be typical of the Proposed Class (the "Typicality Requirement"). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." <u>China MediaExpress</u>, 38 F. Supp. 3d at 424; <u>see also</u> <u>In re Drexel Burnham Lambert Group Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992).

    The Typicality Requirement is "not demanding." <u>Tsereteli v. Residential Asset Securitization Trust 2006-A8</u>, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (internal citations omitted). "Typicality does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." <u>Pennsylvania Ave. Funds v.</u>

SPA-10

Inyx Inc., No. 08-CV-6857 PKC, 2011 WL 2732544, at *4
(S.D.N.Y. July 5, 2011)(internal citations and quotation
marks omitted).

As discussed in connection with the Commonality
Requirement, there are common questions of law and fact
affecting all class members in the Proposed Class. Moreover,
those questions of law and fact are central to the claims of
all class members of the Proposed Class. SAC does not dispute
typicality in their opposition papers nor has SAC pointed to
unique legal and factual defenses to which the claims of
Kaplan Plaintiffs, not other members of the Proposed Class,
are subject. See, e.g., Tserateli, 283 F.R.D. at 208 ("[A]
finding of typicality would not be precluded even if certain
plaintiffs are unable to demonstrate that they would recover
any damages with respect to certain certificates.") (emphasis
in original).

Accordingly, because Kaplan Plaintiffs allege common
questions of law and fact affecting all Proposed Class members
and Kaplan Plaintiffs' claims are typical of the Proposed
Class as a whole,  Kaplan Plaintiffs have met the Typicality
Requirement of Rule 23(a)(3).

    d.   Adequacy

Rule 23(a)(4) requires that the representative of the
parties will "fairly and adequately protect the interests of

- 10 -

Case 15-4067, Document 1, 12/16/2015, 1667891, Page43 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 11 of 25

SPA-11

the class" (the "Adequacy Requirement"). Fed. R. Civ. P.
23(a)(4). To meet this requirement, the lead plaintiff's
counsel must be "qualified, experienced, and generally able
to conduct the proposed litigation," and the class
representative must not have interests conflicting with the
class. See Livent, 210 F.R.D. at 517 (internal citations and
quotation marks omitted).

SAC argues that Kaplan Plaintiffs' Proposed Class
Counsel are inadequate due to their failure to provide
discovery regarding a third party litigation funding
agreement and related documents. (Dkt. No. 217 at 22-23.).
SAC contends that without this discovery, the parties cannot
know whether the Proposed Class Counsel is being influenced
by nonparty outsiders to this litigation. Id.

The Court notes that it has already disposed of SAC's
objection regarding the above mentioned litigation funding
agreement and related documents. On June 26, 2015, Magistrate
Judge Kevin Fox, to whom this matter had been referred for
supervision of pretrial proceedings, issued an Order (Dkt.
No. 190, "June 26 Order"), in which he denied SAC's motion to
compel Kaplan Plaintiffs to produce their litigation funding
agreement and related documents. SAC subsequently filed
objections to the June 26 Order. (Dkt. No. 202.) This Court
ordered a stay of the June 26 Order pending the resolution of

SPA-12

the objections raised. (Dkt. No. 206.) The Court then remanded
the June 26 Order to Magistrate Judge Fox for a statement of
the reasoning and findings supporting it. (Dkt. No. 214.) In
response, Magistrate Judge Fox issued an Order dated
September 10, 2015 ("September 10 Order"), which (1) vacated
the June 26 Order, (2) again denied SAC's motion, and (3)
provided the reasoning and findings supporting the decision.
(Dkt. No. 222.) On September 15, 2015, this Court issued an
Order (Dkt. No. 223, "September 15 Order") accepting the
September 10 Order in its entirety. On September 18, 2015,
SAC filed a letter with the Court ("September 18 Letter")
requesting that the Court vacate its September 15 Order and
allow SAC an opportunity to serve and file objections. (Dkt.
No. 224.) On September 28, 2015, the Court affirmed its
September 15 Order, once again denying SAC's arguments
regarding the litigation funding agreement and related
documents.

The Court is persuaded that the appointment of the
Proposed Class Counsel is appropriate. Proposed Class Counsel
have vigorously pursued the claims in this litigation and
have adequately represented classes in other securities
litigation and complex class actions. The Proposed Class
Counsel have additionally provided the Court with
representations of their commitment to vigorously prosecute

SPA-13

this action and to devote all necessary resources to it. (See Wohl Decl. at 3, Dkt. No. 193.) SAC fails to put forth any evidence to the contrary; mere speculation is insufficient. Therefore, the Court finds that Proposed Class Counsel is qualified, experienced, and able for the purposes of Rule 23(a)(4).

The Court is also persuaded that the Proposed Class Representatives have no conflicts with the other members of their respective Proposed Classes. SAC does not raise objections to adequacy vis-à-vis the Proposed Class Representatives in their opposition papers. Accordingly, the Court finds that the Proposed Class Representatives satisfy the Adequacy Requirement of Rule 23(a)(4).

### 2.   Rule 23(b)(3) Requirements

In addition to satisfying Rule 23(a), Kaplan Plaintiffs must also establish that this action may be maintained as a class action under Rule 23(b). Kaplan Plaintiffs seek to certify the Proposed Class pursuant to Rule 23(b)(3), which provides that an action is maintainable as a class action if "questions of law or fact common to class members predominate over any questions affecting only individual members" (the "Predominance Requirement") and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "Superiority

- 13 -

Case 15-4067, Document 1, 12/16/2015, 1667891, Page46 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 14 of 25

SPA-14

Requirement"). Fed. R. Civ. P. 23(b)(3). "A class certified pursuant to Rule 23(b)(3) is sometimes referred to as an 'opt-out' class because Rule 23(c)(2) mandates that members of a class certified under Rule 23(b)(3) be afforded the opportunity to 'request exclusion' from that class." In re Vivendi, 242 F.R.D. 76, 90 (S.D.N.Y. 2007). Should the Court certify the Proposed Class, any investor who does not opt out of the class "is bound by the final disposition of the case." Id.

### a. Predominance Requirement

The Predominance Requirement is a more demanding standard than the Commonality Requirement and is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). The Predominance Requirement does not require that every issue be subject to class-wide proof, only that common questions predominate over questions affecting only individual class members. See Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1196 (2013). That standard is met here.

SPA-15

Kaplan Plaintiffs' claims under Section 10(b) of the Exchange Act require proof of the following elements: "[T]he defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." In re MF Global Holdings Ltd. Secs. Litig., 982 F. Supp.2d 277, 303 (S.D.N.Y. 2013)(internal citations omitted). In addition, in an insider trading case premised on tippee liability, Kaplan Plaintiffs must show: "(1) [the tipper] possessed material, nonpublic information regarding [the company]; (2) [the tipper] disclosed this information to [the tippee] ; (3) [the tippee] traded in [the company's securities] while in possession of that non-public information provided by [the tipper]; (4) [the tippee] knew or should have known that [the tipper] violated a relationship of trust by relaying [the company] information; and (5) [the tipper] benefitted by the disclosure to [the tippee]." SEC v. Warde, 151 F.3d 42, 47 (2d Cir. 1998) (citing Dirks v. SEC, 463 U.S. 646, 654-64 (1983)).

There is no dispute as to the class-wide, generalized nature of Kaplan Plaintiffs' proffered proof with respect to the first three elements of their claims under Section 10(b) and the five elements associated with tippee liability.

- 15 -

Case 15-4067, Document 1, 12/16/2015, 1667891, Page48 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 16 of 25

SPA-16

SAC's two principal arguments with respect to Kaplan
Plaintiffs' purported failure to meet the Predominance
Requirement address the fourth and fifth elements of Kaplan
Plaintiffs' Section 10(b) claim.   First, SAC argues that a
class-wide presumption of reliance does not apply, thereby
necessitating individualized proof of reliance on an
investor-by-investor basis.   Second, SAC argues that Kaplan
Plaintiffs' failure to identify a class-wide theory of
damages forecloses a finding of predominance.   The Court
considers, and rejects, each of these arguments in turn.

i.   Presumption of Reliance

Kaplan Plaintiffs allege that SAC failed to disclose
nonpublic information and therefore Kaplan Plaintiffs' claims
sound in omission.   As the Court held in Dodona I, LLC v.
Goldman, Sachs & Co., "[s]ince [Plaintiff] alleges omissions
rather than affirmative misstatements, the element of
reliance may be presumed if the omissions were material."
847 F. Supp. 2d 624, 648 (S.D.N.Y. 2012).   This rule applies
in the context of an insider trading claim.   See Simon
DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc., 186
F.3d 157, 173 (2d Cir. 1999).

With regard to whether the alleged omissions were
material, a "fact is material if there is a substantial
likelihood that the disclosure of the omitted fact would have

- 16 -

SPA-17

been viewed by the reasonable investor as having significantly altered the total mix of information made available." Anwar v. Fairfield Greenwich, Ltd., 306 F.R.D. 134, 145 (S.D.N.Y. 2015) (internal citations omitted). Kaplan Plaintiffs have sufficiently alleged the materiality of the omissions they allege, including, but not limited to, the price decline in Elan ADRs with respect to the Buyer Class Period, and the Elan ADR price gains resulting from the inside information with respect to the Seller Class Period. Kaplan Plaintiffs also cite to the ruling of Judge Gardephe in the related criminal case, rejecting Martoma's claim that the information he provided to Gilman and Ross was not material. See United States v. Martoma, No. 12 Cr. 973 PGG, 2014 WL 4384143, at *5 (S.D.N.Y. Sept. 4, 2014) ("The evidence the Government offered at trial on this point is sufficient to support a conclusion that a 'reasonable investor' would have found the efficacy data disclosed at the ICAD conference 'material' – i.e., 'significant in deciding whether to buy, sell, or hold securities, and at what price to buy or sell securities.'").

Accordingly, because the Court is satisfied that Kaplan Plaintiffs have sufficiently alleged the materiality of the omissions at issue, reliance may be presumed pursuant to the standard established in Affiliated Ute Citizens of Utah v.

- 17 -

SPA-18

United States. 406 U.S. 128, 153-54 (1972) ("Affiliated Ute")
(holding that in a case "involving primarily a failure to
disclose, positive proof of reliance is not a prerequisite to
recovery.  All that is necessary is that the facts withheld
be material in the sense that a reasonable investor might
have considered them important in the making of this
decision.").

SAC argues that the Affiliated Ute presumption does not
apply here because (1) there exists no general duty to the
public to disclose material, nonpublic information and (2)
any obligation to disclose the nonpublic information to the
general public was foreclosed because Gilman and Ross, the
alleged insider tippers, were legally precluded from doing so
by virtue of their positions in the company and
confidentiality agreements entered into with Elan and Wyeth,
respectively.  (Dkt. No. 217 at 4-10.) SAC has correctly
identified that the tippee's duty to disclose material,
nonpublic information prior to trading on that information is
derivative from the obligations of the tipper vis-à-vis the
company and the information. (See Dkt. No. 217 at 5-7.) As
such, the tippee assumes any fiduciary duty of the tipper to
the shareholders of a corporation not to disclose or trade
with material, nonpublic information. See id. What SAC has
failed to identify, however, is that the duty to disclose

- 18 -

Case 15-4067, Document 1, 12/16/2015, 1667891, Page51 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 19 of 25

SPA-19

arises where an insider tipper has breached his fiduciary duty to the shareholders by disclosing the information to the tippee; such obligation is not linked to whether or not disclosure by the tipper was feasible. It is the breach of trust and confidence between the insider tipper and the company that gives rise to the tippee's duty to disclose material, nonpublic information in advance of trading. See Chiarella v. United States, 445 U.S. 222, 230 (1980) ("Thus, administrative and judicial interpretations have established that silence in connection with the purchase or sale of securities may operate as a fraud actionable under § 10(b). . . . [S]uch liability is premised upon a duty to disclose arising from a relationship of trust and confidence between parties to a transaction."); see also Dirks v. S.E.C., 463 U.S. 646, 660-61 (1983) ("[A] tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach.").

Here, Gilman and Ross allegedly breached their fiduciary duty to Elan and Wyeth by allegedly providing SAC with material, nonpublic information in breach of their confidentiality agreements with Elan and Wyeth. The alleged

Case 15-4067, Document 1, 12/16/2015, 1667891, Page52 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 20 of 25

SPA-20

breach gave rise to SAC's derivative breach and as such engendered SAC's duty to disclose. Because the Court is persuaded that Kaplan Plaintiffs have sufficiently alleged materiality, it follows that Kaplan Plaintiffs are entitled under <u>Affiliated Ute</u> to a presumption of reliance.

Moreover, "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." <u>Amgen Inc. v. Connecticut Ret. Plans & Trust Funds</u>, 133 S. Ct. 1184, 1191 (2013) (internal quotations omitted). The Court declines to rule on the merits of the reliance issue at this stage of class certification.

ii.   Damages Model

SAC argues that determination of damages will require individualized inquiries. However, this is not a case in which "[q]uestions of individual damage calculations will inevitably overwhelm issues common to the class." <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1433 (2013). To the contrary, Kaplan Plaintiffs make class-wide claims for damages and have demonstrated that calculation of individual class members' damages will rely on objective class-wide methodology. (<u>See</u> Wohl Decl., Ex. 6 at 9 n.3, Dkt. No. 234) (stating that "plaintiffs' damages under <u>Elkind</u> are calculated based on the overall price change from the time of

the contemporaneous trade up to 'the time [the plaintiff] learned the tipped information or at a reasonable time after it became public,' 635 F.2d at 172. . . . [T]he tippee's disgorged gain is then calculated and is 'shared pro rata.' Id.").

Next, SAC argues that a determination of damages will require a determination of how much time each investor would have reasonably needed to digest the disclosure that came out of the ICAD conference on June 29, 2008. This objection is not availing. "[I]t is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d Cir. 2010); see also Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 181 (S.D.N.Y. 2008) ("Although the damages, if any, owed to each individual class plaintiff who succeeds on his or her claims will vary, that fact does not defeat certification if the method of calculating damages is common to the class."). Moreover, the Court is not persuaded that determination of the time by which an investor would have reasonably needed to digest the relevant disclosures requires a subjective, individualized assessment. As noted earlier, the purpose of a Rule 23(b)(3) certification is not to adjudicate the case.

Case 15-4067, Document 1, 12/16/2015, 1667891, Page54 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 22 of 25

SPA-22

As such, the Court declines to rule on the merits of the "reasonable time" issue at this stage of class certification.

Thus, in light of the class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance under Rule 23(b)(3).

Accordingly, Kaplan Plaintiffs have satisfied the Predominance Requirement of Rule 23(b)(3).

b.   <u>Superiority Requirement</u>

When certifying a proposed class in accordance with Rule 23(b)(3), courts must consider whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Superiority Requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication. Securities suits easily satisfy the Superiority Requirement of Rule 23(b)(3) because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." <u>Green</u>, 406 F.2d at 301; <u>see also</u> <u>In re Blech Sec. Litig.</u>, 187 F.R.D. 97, 107-08 (S.D.N.Y. 1999).

Case 15-4067, Document 1, 12/16/2015, 1667891, Page55 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 23 of 25

SPA-23

SAC does not argue that Kaplan Plaintiffs have failed to
satisfy the Superiority Requirement. Accordingly, because
there is a risk that, absent class action, certain Elan
investors would be unable to adjudicate their claims, the
Court is satisfied that Kaplan Plaintiffs have met the
Superiority Requirement.

Since Kaplan Plaintiffs have satisfied all of the
relevant requirements of Rule 23, the Court
thus certifies the Proposed Elan Classes and appoints the
Proposed Class Representatives as Class Representatives.

B.   APPOINTMENT OF CO-LEAD COUNSEL

Under Rule 23(g), a court's appointment of lead class
counsel must consider "(i) the work counsel has done in
identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other
complex litigation, and the types of claims asserted in the
action; (iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing
the class . . . ." Fed. R. Civ. P. 23(g)(1)(A). Additionally,
a court "may consider any other matter pertinent to counsel's
ability to fairly and adequately represent the interests of
the class . . . ." Fed. R. Civ. P. 23(g)(1)(B).

Furthermore, the Private Securities Litigation Reform
Act ("PSLRA") instructs that a lead plaintiff "shall, subject

Case 15-4067, Document 1, 12/16/2015, 1667891, Page56 of 57
Case 1:13-cv-02459-VM   Document 40   Filed 12/02/15   Page 24 of 25

SPA-24

to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. section 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008) (quoting In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529, 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008).

Kaplan Plaintiffs have selected Wohl & Fruchter and Pomerantz as Proposed Class Counsel. As discussed above in connection with satisfaction of the Adequacy Requirement of Rule 23(a)(4), these two firms have vigorously pursued Kaplan Plaintiffs' claims to date and have extensive experience in securities class action litigation. Kaplan Plaintiffs' counsel have demonstrated knowledge of the applicable law and have committed significant resources to its representation of Kaplan Plaintiffs. Accordingly, the Court approves Wohl & Fruchter and Pomerantz as Co-Lead Class Counsel.

## IV.   ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Motion (Dkt. No. 191) filed by Kaplan Plaintiffs for Class Certification is **GRANTED**; and it is further

SPA-25

**ORDERED** that the Motion (Dkt. No. 191) filed by Kaplan Plaintiffs for the appointment of Class Representatives for the Elan Classes and the appointment of Co-Lead Class Counsel for the Elan Classes is **GRANTED** in accordance with this Decision and Order.

**SO ORDERED.**

Dated:     New York, New York
           2 December 2015

                                        Victor Marrero
                                          U.S.D.J.